MANSOUR MERRIKHI NASRABADI,

              Plaintiff,

              v.

TAHER KAMELI,

              Defendant.

No. 18 C 8514

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Mansour Nasrabadi brings malpractice and breach of fiduciary duty claims against his former attorney Taher Kameli. Kameli has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 15.[1] That motion is denied.

### Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of

---

[1] Kameli also styles his motion under Rule 12(b)(1), arguing that the statute of limitations for legal malpractice is jurisdictional. But if "the right upon which the request for relief is based is a common law right, the time limitation is merely a procedural matter not affecting the jurisdiction of the tribunal." *Smith v. City of Chicago Heights*, 951 F.2d 834, 838 (7th Cir. 1992). A "legal malpractice action existed at common law," *Weisman v. Schiller, Ducanto & Fleck*, 733 N.E.2d 818 (Ill. App. Ct. 1st Dist. 2000), so Kameli's statute of limitations argument does not implicate the Court's subject matter jurisdiction.

the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

The EB 5 visa program enables foreign nationals to qualify for permanent U.S. residency by investing at least $500,000 in qualified investment enterprises. In February 2010, Nasrabadi engaged Kameli to represent him in this visa process. Kameli advised Nasrabadi to invest in a fund Kameli owned called the Aurora Fund. The Aurora Fund was to provide loans for the construction of an assisted living facility called Aurora Memory Care. Nasrabadi's engagement letter indicates that

Nasrabadi waived any conflict of interest arising from Kameli's ownership of the Fund. *See* R. 1-1 at 3-4.

Nasrabadi invested $500,000 in the Aurora Fund, and Kameli represented him in the transaction. The Fund's private placement memorandum states that the loan to construct the Facility would provide for a first priority security interest in the Facility's assets and real estate. *See* R. 1-2 at 7 (p.5). But Nasrabadi alleges that Kameli and the Fund never acquired a security interest for its loan to the Facility. Instead, Kameli and the Facility secured a separate first priority mortgage loan to finance the Facility in June 2015. *See* Bankr N.D. Ill. 18-11289, R. 130 ¶¶ 22-23. Nasrabadi alleges that Kameli used the money from the Fund for his personal benefit. The bank holding the first priority mortgage loan foreclosed on July 27, 2017.

On June 22, 2017, the U.S. Securities and Exchange Commission filed a civil securities fraud action against Kameli in this district (17 C 4686). Two months later, Kameli's firm sent a letter to Nasrabadi and other clients stating that "[g]iven the SEC's filing of a civil lawsuit against Mr. Kameli, [the Fund and the Facility] . . . there likely exists a conflict of interest that may not necessarily be included in your prior written waiver of conflicts of interest." R. 1-3 at 3.

Prior to the SEC lawsuit, another of Kameli's clients had sued the U.S. Department of Homeland Security for rejecting his EB 5 visa because the assisted living facility he invested in (different from the Facility in this case, but also owned by Kameli) had never been built (15 C 1387). Kameli represented the client on appeal (appellate case no. 17-2040). On November 3, 2017, the Seventh Circuit ordered

briefing on the issue of whether Kameli should be disqualified because of the "significant overlap between the SEC's claims against Kameli and the facts in [the action against Homeland Security]." In a decision dated February 26, 2018, the Seventh Circuit disqualified him:

> This case presents at least two concurrent conflicts of interest, neither of which can be waived by informed client consent. No lawyer could reasonably continue the representation under these circumstances.
>
> First, a conflict of interest arises when an attorney has an incentive to reject lines of inquiry or argument that might help his client's case. Kameli has precisely this motivation. He and [the plaintiff] might share an interest in proving that the Elgin investment was not a sham, but that is where their alliance begins and ends. Kameli would not advise [the plaintiff] to litigate his case any other way, such as by alleging fraud and seeking reconsideration of the USCIS's decision. It therefore strains credulity to think that Kameli would be diligent in Doe's case. Indeed, a diligent lawyer must take "whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." Kameli's self-interest inhibits him from carrying out this duty.
>
> Second, a lawyer owes his client a duty of "undivided fidelity." Having a duty to someone else obviously "interfere[s] with the undivided loyalty [that] the attorney owes his client" and ultimately "detract[s] from achieving the most advantageous position for his client." Kameli's divided obligations to his various investors and clients put him in precisely this position. The SEC alleges that Kameli "has remained in total control" of the relevant EB-5 projects he created. Many of these projects evidently "lack money to complete construction," meaning Kameli must decide which projects to shore up with the limited funds he has. His duty of loyalty to [the plaintiff] would require him to complete the Elgin project because that would best position him to obtain lawful permanent residence. His obligations to his other investors, on the other hand, require him to invest in their respective enterprises. This

> catch-22 is the epitome of divided loyalty and thus makes
> Kameli's continued representation untenable.

*Doe v. Nielsen*, 883 F.3d 716, 718-19 (7th Cir. 2018) (internal citations omitted).

On April 18, 2018, one of the Facility's creditors filed an involuntary Chapter 11 bankruptcy petition against the Facility in this district (18-11289). The bankruptcy court approved sale of the Facility's property by the Trustee for $12.7 million on January 29, 2019. *See* Bankr N.D. Ill. 18-11289, R. 148. The bank holding the first priority mortgage is owed $8.4 million. The Fund and other creditors controlled by Kameli are owed "more than $12 million," and about another $1 million is owed to additional unsecured creditors. *Id.*, R. 73 at 4. These numbers make it highly likely that Nasrabadi will lose most of his investment in the Facility.

## Analysis

### I.    Rule 8

As an initial matter, Kameli argues that Nasrabadi "fails to put forth his allegations in a straight forward [sic] manner that would allow Defendants, and this Court, to understand exactly what it is that Plaintiff is claiming." R. 15 at 3. Federal Rule of Civil Procedure 8(a) requires merely "a short plain statement of the claim showing that the pleader is entitled to relief." Despite Kameli's criticisms of the organization of Nasrabadi's complaint, it is clear that Nasrabadi claims that Kameli breached his duties to Nasrabadi by: (1) misrepresenting that the Fund would have a first priority security interest in its loan to the Facility, *see* R. 1 ¶¶ 14-16; and (2) failing to inform Nasrabadi that Kameli's conflicts were unwaivable, particularly

after the Seventh Circuit made this express holding, *see id.* ¶¶ 21-22. The complaint is sufficiently clear for Kameli and the Court to address.

## II.     Rule 9(b)

Kameli also argues that Nasrabadi's claim that Kameli misrepresented facts about the Fund's loan to the Facility "sounds in fraud" such that it must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The Court agrees that this claim "sounds in fraud" and is subject to Rule 9(b) because it "relies upon" an allegation that Kameli "intentionally misled" Nasrabadi. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

The Court disagrees, however, that Nasrabadi's allegations fail to satisfy Rule 9(b). That rule requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." "The reference to 'circumstances' in the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff[.]" *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("particularity . . . means the who, what, when, where, and how").

Nasrabadi has alleged that the Fund's private placement memorandum misrepresented whether the Fund would have a first priority security interest in the Facility's assets, and that Kameli was responsible for the contents of that document

and convincing Nasrabadi to make the investment. These allegations describe the "who, what, when, where, and how" of the claim and satisfy Rule 9(b).

## III. Duplicative Claims

In passing, Kameli also argues that claims for legal malpractice and breach of fiduciary duty are duplicative such that the fiduciary duty claim should be dismissed. *See* R. 15 at 5 (¶ 9). True, "when a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative." *Scanlan v. Eisenberg*, 913 F. Supp. 2d 591, 597 (N.D. Ill. 2012). But it is not clear at this point in the proceedings whether Kameli's alleged failure to secure priority for the Fund's loan to the Facility, and instead to give priority to a different creditor, can be said to be within the scope of his representation of Nasrabadi. And in any event, as the Court explains below, a claim based on this conduct will proceed regardless. It is not necessary to decide at this time whether these allegations must proceed as a legal malpractice claim.[2]

## IV. Timeliness

To the extent the facts show that Nasrabadi's claims must proceed as claims for legal malpractice, Illinois law provides that a legal malpractice claim must be brought within two years "from the time the person bringing the action knew or

---

[2] Since the breach of fiduciary duty claim is still in the case for the time being, it is also unnecessary at this time for the Court to address Kameli's argument that punitive damages are not available for a legal malpractice claim. "Illinois law permits the award of punitive damages for . . . breach of fiduciary duty claims." *Future Envtl., Inc. v. Forbes*, 2014 WL 3026485, at *5 (N.D. Ill. July 3, 2014) (citing *Tully v. McLean*, 948 N.E.2d 714 (Ill. App. Ct. 1st Dist. 2011)).

reasonably should have known of the injury for which damages are sought," 735 ILCS 5/13-214.3(b) (the statute of limitations), and in any event no more than six years after the relevant "act or omission," 735 ILCS 5/13-214.3(c) (the statue of repose). Kameli argues that Nasrabadi's claims are based on the engagement agreement signed in February 2010, and as such are untimely as this action was not filed until 2018.

The Court agrees that Nasrabadi should have known about Kameli's conflicts of interest from the inception of the engagement. Indeed, Kameli's engagement letter highlighted that "[s]uch conflicts may at times affect the professional judgment of the Firm." R. 1-1 at 3. A person does not need a law degree to understand the conflict that comes from standing on both sides of a transaction as Kameli did here.

However, a cause of action for legal malpractice under Illinois law does not accrue until the client knows of his injury. *See Carlson v. Fish*, 31 N.E.3d 404, 411 (Ill. App. Ct. 1st Dist. 2015). And the injury in a legal malpractice action "is [not] the attorney's negligent act itself." *N. Ill. Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 107 (Ill. 2005). Rather, "a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." *Id.*

Here, the alleged injury—caused by both the failure to disclose the unwaivable nature of Kameli's conflict of interest and his misrepresentations—is the loss of the investment due to Kameli's failure to acquire first priority for the Fund's loan to the Facility. Nasrabadi does not allege when this failure occurred or when he learned of

it. The pleadings in the bankruptcy case indicate that Kameli acquired the separate higher priority bank loan in 2015, which would place the claim within Illinois's six-year statute of repose. But in any case, timeliness is an affirmative defense that the complaint does not have to anticipate. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) ("[A] complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations."). And Nasrabadi has not pleaded facts demonstrating that his knowledge of Kameli's actions is so old that the claim is untimely. *Cf. Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) ("[I]f a plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis."). As long as the Court can "imagine" a scenario in which the claim is timely, it is improper to dismiss it on the pleadings. *See U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 628 (7th Cir.2003) (holding that the "right question" is not whether the plaintiff has alleged "facts that tend to defeat affirmative defenses," but "whether it is possible to imagine proof of the critical facts consistent with the allegations in the complaint" that would fall within the period of limitations). Therefore, the Court will not dismiss Nasradabi's claims as untimely at this point in the proceedings.

## V.    Damages

Lastly, Kameli argues that Nasrabadi's damages are speculative so his claims are not ripe. It may be true that Nasrabadi's loss of his investment is yet to be precisely determined in the bankruptcy court. But the difference between the Facility's remaining assets and liabilities shows that Nasrabadi is certain to suffer a

loss. And in any case, the attorneys fees Nasrabadi paid to Kameli are a sum certain, and there is nothing in the complaint indicating that these fees do not satisfy the amount in controversy necessary to support diversity jurisdiction.

### Conclusion

Therefore, Kameli's motion to dismiss, R. 15, is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 20, 2019