UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MANSOUR MERRIKHI NASRABADI,

    Plaintiff,

v.

TAHER KAMELI,

    Defendant.

No. 18 C 8514

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Mansour Nasrabadi brings malpractice and breach of fiduciary duty claims against his former attorney Taher Kameli. Kameli has moved to compel arbitration. R. 25. That motion is denied.

**Legal Standard**

Motions to compel arbitration are reviewed under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The "opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

**Background**

As the Court recounted in denying Kameli's earlier motion to dismiss, the EB 5 visa program enables foreign nationals to qualify for permanent U.S. residency by investing at least $500,000 in qualified investment enterprises. In November 2010, Nasrabadi engaged Kameli to represent him in this visa process. Kameli advised Nasrabadi to invest in a fund Kameli owned called the Aurora Fund. The Aurora Fund was to provide loans for the construction of an assisted living facility called Aurora Memory Care. Nasrabadi's engagement letter indicates that Nasrabadi waived any conflict of interest arising from Kameli's ownership of the Fund. *See* R. 1-1 at 3-4.

Nasrabadi invested $500,000 in the Aurora Fund, and Kameli represented him in the transaction. The Fund's private placement memorandum states that the loan to construct the Facility would provide for a first priority security interest in the Facility's assets and real estate. *See* R. 1-2 at 7 (p.5). But Nasrabadi alleges that

2

Kameli and the Fund never acquired a security interest for its loan to the Facility. Instead, Kameli and the Facility secured a separate first priority mortgage loan to finance the Facility in June 2015. *See* Bankr N.D. Ill. 18-11289, R. 130 ¶¶ 22-23. Nasrabadi alleges that Kameli used the money from the Fund for his personal benefit. The bank holding the first priority mortgage loan foreclosed on July 27, 2017.

On April 18, 2018, one of the Facility's creditors filed an involuntary Chapter 11 bankruptcy petition against the Facility in this district (18-11289). The bankruptcy court approved sale of the Facility's property by the Trustee for $12.7 million on January 29, 2019. *See* Bankr N.D. Ill. 18-11289, R. 148. The bank holding the first priority mortgage is owed $8.4 million. The Fund and other creditors controlled by Kameli are owed "more than $12 million," and about another $1 million is owed to additional unsecured creditors. *Id.*, R. 73 at 4. These numbers make it highly likely that Nasrabadi will lose most of his investment in the Facility.

Based on these allegations, Nasrabadi brings claims of legal malpractice and breach of fiduciary duty against Kameli, alleging that Nasrabadi: (1) misrepresented that the Fund would have a first priority security interest in its loan to the Facility; and (2) failed to inform Nasrabadi that Kameli's conflicts of interest were unwaivable. The Fund is not a defendant in this case.

**Analysis**

Kameli's motion to compel arbitration is based on an arbitration provision contained in the Fund's Operating Agreement. Nasrabadi is a signatory to the Operating Agreement, but Kameli is not. Nevertheless, Kameli argues that he can

3

seek to enforce the arbitration clause because he is an "affiliate" of the Fund. R. 30 at 4.

Even if Kameli is correct that his affiliation with the Fund gives him standing to enforce the arbitration clause—an issue the Court does not reach—Nasrabadi's claims must be within the scope of the arbitration clause. Nasrabadi's claims sound in tort, but Kameli argues that Nasrabadi's "claim of alleged misrepresentation in the lien priority of the [Fund] and alleged misrepresentation in the conflicts of interest of [Kameli] stem from [Nasrabadi's] membership in the [Fund]," and such "claims belong in arbitration." R. 25 at 6. This argument is in accord with Seventh Circuit case law holding that the scope of an arbitration clause reaches not only contractual claims, but tort claims that arise out of the contractual relationship. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) ("More important, a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance."); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) ("We have routinely held that a party may not avoid a contractual arbitration clause merely by casting its complaint in tort."). For instance, in *Kiefer*, the plaintiff claimed that the defendant improperly solicited one of the plaintiff's employees. The Seventh Circuit affirmed the district court's grant of a motion to compel arbitration pursuant to a distributorship agreement the parties had signed. The Seventh Circuit explained:

> The tortious interference claim in [the] amended complaint arises from the very heart of the relationship between [the

4

> parties] with respect to the Kansas City market. Indeed, the facts set forth in [the] complaint demonstrate that the decision to enter into the distributorship agreement for the Kansas City market appeared to be contingent upon the extension of an offer of employment from [the plaintiff] to [the employee the defendant solicited].

*Id.*

The problem with Kameli's argument, however, is that Nasrabadi's claims are based on a relationship with Kameli that is distinct from Nasrabadi's contractual relationship with the Fund. Whether characterized generally as fiduciary, or more specifically as attorney-client, Nasrabadi alleges that Kameli violated a duty to truthfully advise him with respect to the naturalization process. The Fund's operating agreement does not mention this relationship. Rather, according to the operating agreement, the Fund was created "for the purpose of extending an . . . investment loan to [the Facility] . . . formed to renovate a historic building in the City of Aurora, Illinois and convert it into memory care assisted living united for senior citizens with Alzheimer, dementia, and related illnesses." R. 25-3 at 2. The operating agreement contains no provisions regarding the naturalization process for Nasrabadi or any other individuals, and it does not mention Kameli's obligation to truthfully advise Nasrabadi. Indeed, the attorney-client relationship between Kameli and Nasrabadi was memorialized in a "legal services agreement" that does not contain an arbitration clause. *See* R. 1-1. The fact that Nasrabadi's claims also concern Kameli's advice regarding the Fund does not change the fact that the relationships or agreements concern distinct subject matter. Since the operating agreement is irrelevant to the fiduciary relationship between Nasrabadi and Kameli, the scope of

5

the operating agreement's arbitration clause cannot be said to extend to claims for violation of that fiduciary relationship.

## Conclusion

Therefore, Kameli's motion to compel arbitration, R. 25, is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 6, 2019